Cite as: 600 U. S. \_\_\_\_ (2023)　　　1

# SUPREME COURT OF THE UNITED STATES

JONATHAN ROBERTS, ET AL. *v.* JAMES V.
MCDONALD, COMMISSIONER, NEW
YORK STATE DEPARTMENT
OF HEALTH, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 22–757.　Decided June 30, 2023

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO, with whom JUSTICE THOMAS joins, respecting the denial of certiorari.

The circumstances underlying the dispute below have long since come and gone, and I therefore agree with the Court's decision to deny review. But I write to note that this case involves an issue of ongoing importance: whether the Equal Protection Clause permits governments to use race or ethnicity as a proxy for health risk and therefore "prioritize the treatment of patients" on that basis. *Roberts* v. *Bassett*, 2022 WL 16936210, \*3, n. 2 (CA2, Nov. 15, 2022) (Cabranes, J., concurring) (noting the "portentous legal issues" implicated by such policies).

When "several new COVID–19 treatments for high-risk patients" were approved in late 2021, the treatments were "briefly in short supply" relative to need. *Id.*, at \*1 (summary order). New York State "instruct[ed] providers to follow" its guidance on "higher priority risk group[s]" so long as the "supply shortage persisted." *Ibid.* Echoing similar guidance from the federal Centers for Disease Control and Prevention, the State's guidance specified that " '[n]onwhite race or Hispanic/Latino ethnicity should be considered a risk factor'" when prioritizing patients. *Id.*, at \*1, \*3 (alteration in original); *Roberts* v. *Bassett*, 2022 WL 785167, \*2 (EDNY, Mar. 15, 2022). The State justified the use of

race and ethnicity as proxies for health risk by appealing to "'longstanding systemic health and social inequities.'" *Roberts*, 2022 WL 785167, at \*2.

As we have stated many times and have recently reaffirmed, the Equal Protection Clause places a "daunting" obstacle in the way of any government seeking to allocate benefits or burdens based on race or ethnicity, typically giving way only when the measure in question is "'narrowly tailored'"—that is, "'necessary'"—to "remediat[e] specific, identified instances of past discrimination that violated the Constitution or a statute." *Students for Fair Admissions, Inc.* v. *President and Fellows of Harvard College*, 600 U. S. ___, ___ (2023) (slip op., at 15). Therefore, government actors may not provide or withhold services based on race or ethnicity as a response to generalized discrimination or as a convenient or rough proxy for another trait that the government believes to be "'characteristic'" of a racial or ethnic group. *Id.*, at ___ (slip op., at 20).

Under that precedent, New York's general reference to "longstanding systemic health and social inequities" would not have sufficed to allow the State to deny a person medical treatment simply because that person is viewed by the State as being a member of the wrong racial or ethnic group. The shortage at issue in this case appears, thankfully, to have concluded. But in the event that any government again resorts to racial or ethnic classifications to ration medical treatment, there would be a very strong case for prompt review by this Court.